**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**Case No. 5:25-ct-03317-D**

| | |
|---|---|
| JARON M CORNWELL,<br><br>Plaintiff,<br><br>v.<br><br>LESLIE COOLEY-DISMUKES, et al.,<br><br>Defendants. | **MEMORANDUM OF LAW SUPPORTING MOTION TO DISMISS BY DEFENDANT LAWRENCE ADAIR** |

**COMES NOW**, Defendant named in Plaintiff's Complaint as Adir Lawrence, but, in actually is Lawrence Adair, (hereinafter "Defendant"), by and through the undersigned counsel, and hereby submits the within Memorandum of Law in support of the Motion to Dismiss Plaintiff's Complaint. Plaintiff has failed to state any recognized or cognizable basis for relief or claim upon which relief may be granted against Defendant Adair and the claims against her, in her individual and/or official capacity, should be dismissed pursuant to Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PROCEDURAL BACKGROUND AND NATURE OF THE CASE

Plaintiff Jarron Cornwell filed this §1983 action on December 11, 2025, asserting claims for Eighth Amendment violations arising out of his medical care rendered in a correctional setting. (DE 5). Defendant, by and through undersigned counsel, agreed to waive and accept service on July 28, 2026. (DE 8, 9). Presently, Defendant has moved to dismiss this action in lieu of an Answer and seeks dismissal with prejudice on multiple legal and procedural grounds as further explained hereinbelow.

## STATEMENT OF FACTS

For the limited purposes of this motion, all facts as alleged in Plaintiff's Complaint are taken as true. The basis of Plaintiff's allegations stem from purported deliberate indifference to his medical needs while he was housed at Lumberton Correctional Institution (hereinafter, "Lumberton"). (DE 1) The incidents alleged in the Complaint are summarized below to the extent that they relate to the allegations against Defendant Adair only. After all, this court reviews claims against each defendant individually. <u>See</u> *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (each official "is only liable for his or her own misconduct"); *Clark v. Smith*, No. 22-6958, 2023 WL 4198038 at *4 (4th Cir. June 27, 2023) (citing *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999)). And, as previously explained above, Plaintiff has incorrectly identified Defendant Lawrence Adair as "Adir Lawrence". (*Id*.). Distinctly, Defendant Adair is *not* an employee of the North Carolina Department of Adult Correction (hereinafter "NCDAC"), but was a privately contracted medical provider assigned to render medical services in correctional facilities, including Lumberton.

Plaintiff has purported to bring suit against Defendant in both individual and official capacities and seeks an "extra mattress" and $40,000 in damages based on alleged "negligence of malpractice + denying me medical treatment on my extra mattress" despite his obesity with a weight of 365 pounds. (*Id*. at p. 5). Importantly, Plaintiff's Complaint allegations do not attribute any conduct to Defendant Lawrence by name or with any form of specificity. (*Id*.). Plaintiff claims that these events occurred on: July 8, 2025; September 18, 2025; and, October 8, 2025. (*Id*.). Plaintiff's Complaint states verbatim "Lumberton provider is not acknowledge and respecting the North Carolina policies + procuders (sic)

or guidelines when it comes to me having a EXTRA MATTRESS due to my weight." (*Id*.). Plaintiff asserts resulting pain, headaches, high blood pressure, loss of sleep. (*Id*. at p. 6). Plaintiff claims to sleep with a "c-paq (sic) machine" and alleges that he suffers from diabetes." (*Id*.). Plaintiff later adds to his injuries that he has also suffered "soars (sic) on my side[.]" (*Id*. at p. 7).

To the Complaint, Plaintiff attaches a Medical Duty Status reflecting equipment approvals for items which Plaintiff "[m]ay have" in his possession, including CPAP-related items, an extra blanket, and a "Bed Wedge", and "Extra Mattress Morbid Obesity," with an expiration date or duration fields as shown in the record. (DE 1-1 at p. 1).

Plaintiff also attaches grievance records to his Complaint. (*Id*. at pp. 2-5). As an initial matter, Plaintiff's proffered grievance documentation fails to state the involvement or purported aggrieved conduct of Defendant Lawrence specifically or even with implied generalized reference to Movant, thereby failing to comport with the grievance requirements as mandatory pre-requisite before suit as set forth in the Prison Litigation Reform Act [PLRA]. More importantly, Plaintiff explicitly states in his September 8, 2025, grievance narrative "custody won't give me a (sic) extra mat[.]" (*Id*. at p.3). The Step Two response, dated September 18, 2025, states that new upgraded mattresses had been issued to offenders housed at Lumberton and that previously used "old green mattresses are obsolete[.]" (*Id*. at p. 4). The response further states that offenders with two mattresses were issued one "per medical poster" which was posted outside the medical area for offender review and states that "extra mattresses may not be provided at facilities that have new/upgraded mattresses[.]" (*Id*.). The Step Three dismissal of Plaintiff's grievance appeal, dated October 8, 2025, concludes that staff took appropriate action

and reiterating that extra mattresses are not provided at facilities with upgraded mattresses. (*Id*. at p. 5). The Step Three response further advises Plaintiff to attend medical appointments and to update medical staff regarding any concerns or changes in their medical condition. (*Id*.).

**STANDARD OF REVIEW**

A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams, 697 F.2d at 1219). Second, the movant may contend "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, a court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that a court has subject matter jurisdiction rests with the plaintiff as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). A court should grant dismissal "when the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at

678 (citation omitted). Before a plaintiff will be permitted to impose the substantial burden and expense of discovery on a defendant, he must plead evidentiary facts, and not mere conclusions, which might "plausibly" suggest that the defendant was guilty of misconduct. *Id.* A plaintiff cannot satisfy their pleading burden by pleading mere "labels and conclusions" or by tendering "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Instead, a plaintiff must support legal conclusions with factual allegations that allow a Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Such factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In considering the "factual plausibility" of a claim, the Court "must draw on its judicial experience and common sense" to determine whether the well-pleaded facts of the complaint "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Further, "legal conclusions masquerading as factual allegations" are insufficient to withstand a 12(b)(6) motion to dismiss. *Parham v. Pepsico, Inc.*, 927 F. Supp. 177, 178 (E.D.N.C. 1995), aff'd, 86 F.3d 1151 (4th Cir. 1996). The Court is not obligated to accept as true unwarranted inferences or unreasonable conclusions or arguments. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations and internal quotation marks omitted).

In sum, a motion to dismiss should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The allegations must rise above a "speculative level," and instead, rise to a "plausible" level. *Id.* at 555 & 570.

## ARGUMENT

Plaintiff has sued Defendant in both his individual and official capacities. (DE 1). However, the face of Plaintiff's Complaint shows that he has failed to exhaust his administrative remedies and thereby failed to satisfy mandatory prerequisites before commencing suit against Defendant. Further, Plaintiff cannot support a claim against Defendant in his official capacity for monetary damages, as this claim is barred by the doctrine of qualifies and sovereign immunity. The only claim Plaintiff could possibly bring is his claim for monetary damages against Defendant individually, and he has failed to meet the most basic notice pleading standard to support this claim. Accordingly, Plaintiff's claims against Defendant should be dismissed.

### I. PLAINTIFF'S COMPLAINT SHOWS THAT PLAINTIFF HAS NOT EXHAUSTED ADMINISTRATIVE REMEDIES.

As an initial matter, Plaintiff has failed to properly plead compliance with the Prisoner Litigation Reform Act of 1995 ("PLRA") as to Defendant individually. The PLRA requires that inmates exhaust all administrative remedies against each party to be named with specificity *before* filing their claims with the Courts. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). While the issue of administrative exhaustion is an affirmative defense rather than a pleading requirement that is generally considered at the summary judgment phase, it can be considered by the Court upon a Motion to Dismiss when the Complaint, on its face, demonstrates that remedies have not been exhausted. *Rice v. Rogers*, No. 1:22CV122, 2024 WL 3278527 (M.D.N.C. Jan. 29, 2024), *report and recommendation adopted as modified*, No. 1:22-CV-122, 2024 WL 3278539 (M.D.N.C. Mar. 18, 2024) (citing *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 681-82 (4th Cir. 2005)).

In *Custis v. Davis*, the Fourth Circuit Court of Appeals reviewed the Virginia District Court's *sua sponte* determination that a plaintiff had failed to exhaust administrative remedies. 851 F.3d 358 (4th Cir. 2017). Specifically, the plaintiff alleged in the Complaint that he "attempted to exhaust [his] Administrative remedies," that his grievance was dismissed as "untimely," and that he "appealed that determination to the highest level available." *Id.* At 362. Appellees challenged the use of the word "attempt," arguing that it failed to demonstrate remedy exhaustion. *Id.*

Here, while Plaintiff has attached his grievance records to the Complaint thereby making it part of the initial pleading and record reviewable for the instant dismissal challenge, the grievance itself does not name Defendant in the allegations, nor does it allege that Defendant participated in the denial of the extra mattress, nor does it allege that Plaintiff sought relief from Defendant which was denied. (DE 1-1, pp. 2-5). Rather, Plaintiff's own hand-written evidentiary records states that "**<u>custody</u>**" will not provide him the additional mattress that he seeks. (*Id*. at p. 3). It is undisputed that Defendant, as a contracted medical provider, is not an individual intended by the generalized description of "custody" staff and the basis of the grievance is not one actually involving the sufficiency of medical treatment which may be plausibly attributed to Defendant. Thus, in his grievance, Plaintiff does not assign blame for the alleged denial of the mattress to Defendant specifically, nor does he allege that Defendant was even aware of the denial of the mattress, nor does Plaintiff allege that he ever sought a mattress from Defendant. The Step Two and Step Three responses address a general policy-based denial of extra mattresses due to upgraded mattresses, not a provider-specific refusal contrary to a valid medical order by Defendant Lawrence.

Additionally, Plaintiff appears to assert legal claims for relief premised on events which either pre-date his arrival at Lumberton on September 5, 2025, as his Complaint lists July 8, 2025 as a date of occurrence. (DE 1 at p. 5). Defendant Lawrence is not alleged to have participated in any conduct at any other facility than Lumberton and, thus, exhaustion for those events has not been shown. Plaintiff also makes claims for relief which post-date the grievance allegations as occurring on October 8, 2025. (*Id.*). Any legal claim premised on conduct which occurred following the submission of his grievance on September 8, 2025, is beyond the scope of the exhausted grievance and rendered unexhausted.

Thus, because Plaintiff's grievance records fail to mention or attribute conduct to Defendant and instead lay blame to the actions of "**custody**", Plaintiff should be deemed to have failed to exhaust his administrative remedies as to the alleged conduct of this Defendant and those claims should be dismissed. Further, any claim premised on conduct alleged to have occurred before his September 5, 2025, arrival at Lumberton, or after the date of the submission of the grievance on September 8, 2025, should be deemed as unexhausted and should be dismissed.

The governing law set forth in the PRLA and surrounding precedent is clear that administrative exhaustion is a mandatory prerequisite to filing suit which *cannot* be cured retroactively. The *Custis* Court compared the exhaustion of remedies requirement to the statute of limitations. *Id.* At 362. If a plaintiff were to allege that they were uncertain when the alleged conduct occurred, the Court would not presume for the plaintiff that the conduct occurred within the statute of limitations. Nor would the Court revise the plaintiff's allegations to allege that the incidents occurred within the statute of limitations. Here, the

Court should not reinterpret the Plaintiff's allegations to read that he actively and affirmatively complied with a condition precedent to file suit, when Plaintiff's handwritten grievance allegations state no such thing. The plaintiff is the master of his Complaint, and it is his allegations that create the bedrock of the case. Accordingly, his Complaint should be dismissed on administrative exhaustion grounds.

## II. PLAINTIFF'S OFFICIAL CAPACITY CLAIM AGAINST DEFENDANT DOE IS BARRED BY SOVEREIGN IMMUNITY.

The Eleventh Amendment to the United States Constitution generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See *Alden v. Maine*, 527 U.S. 706, 712-13 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983, see *Quern v. Jordan*, 440 U.S. 332, 343 (1979). Nor has North Carolina waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally *Mary's House, Inc. v. North Carolina*, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (Claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina which had not been waived); *Wiggins v. Ivy*, No. 5:20-CT-3296-FL, 2022 WL 1096898 (E.D.N.C. Feb. 15, 2022) (dismissing the plaintiff's official capacity claims at the frivolity stage due to sovereign immunity). Because a suit against a state official in his official capacity is not a suit against the official but rather a suit against the official's office, *Brandon v. Holt*, 469 U.S. 464, 471 (1985), any suit against a state official in his official capacity is construed as against the state itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

However, it is well settled that neither a state nor its officials acting in their official capacities – including contracted agents such as Movant acting under color of law under

the exclusive control and mandates of the NCDAC - are “persons” subject to suit under 42 U.S.C. § 1983. *Id.*; see *Monell*, 436 U.S. at 690 n. 55. Therefore, because a state is not a “person” under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. *Allen v. Cooper*, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019); see also *West v. Atkins*, 487 U.S. 42, 54 (1998) (explaining that a private entity which contracts with the state to provide medical services acts “under color of state law”). Accordingly, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies, as well as the employees of those agencies when the claims are brought against those employees in their official capacity. See *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003). Sovereign immunity serves as a bar sufficient to grant a motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* In addition, sovereign immunity divests this Court of subject-matter jurisdiction over the matter.

Here, Plaintiff has sued Defendant individually *and* officially, demanding $40,000 and an additional mattress. (DE 1 at p. 8). However, Plaintiff also alleges and indicates that Defendant was a provider at Lumberton, acting as a state employee under color of state action, rendering any official capacity claim against Defendant barred by Eleventh Amendment immunity. See e.g. *Ellis v. Lewis*, No. 5:12-CT-3122-FL, 2014 WL 4384036 (E.D.N.C. Sept. 3, 2014) (dismissing a claim against a prison doctor in his official capacity for monetary damages).

## III. PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED A §1983 CAUSE OF ACTION FOR MONETARY DAMAGES AGAINST DEFENDANT DOE.

Plaintiff seeks to invoke the Eighth Amendment in order to support his claim as against Defendant in his individual capacity. The Eighth Amendment expressly prohibits

the infliction of “cruel and unusual punishments” and protects inmates from inhumane treatment while imprisoned. U.S. Const. amend. VIII; *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The United States Supreme Court discussed the extent of a prisoner’s right to medical attention in *Estelle v. Gamble*, 429 U.S. 97 (1976), and explained that only “deliberate indifference to serious medical needs of prisoners” violates the Eighth Amendment. *Id.* at 104. Therefore, to plead a claim upon which relief may be granted under § 1983, Plaintiff was required to plead facts sufficient to assert both that each Defendant, including Movant, engaged in individual conduct so insufficient or lacking that it was tantamount to providing no care at all, and that Movant acted with knowing indifference to a serious medical need resulting in harm to Plaintiff. *Id.*

An Eighth Amendment claim under § 1983 requires both objective and subjective components. *Id.*; <u>see</u> *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970 (1994); *Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008). As to the objective component, a plaintiff must first allege and thereafter prove that Defendant’s purported deprivation necessary medical care is sufficiently serious. *Farmer*, 511 U.S. at 533-34. A “serious medical need” is “a condition diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor’s attention.’” *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citation omitted). Here, where Plaintiff has alleged only that Defendant was a “provider” assigned to Lumberton, Plaintiff has neither alleged a sufficiently serious medical condition nor any actual refusal of deprivation of medical *treatment* by this specific Defendant.

As to the subjective component, a plaintiff must show that the defendant acted with deliberate indifference to the inmate’s safety. *Farmer*, 511 U.S. at 533-34, 114 S. Ct. at

1977. This second prong "entails something <u>more</u> than mere negligence." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). "It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Id.* Only when an action meets both the objective and subjective elements will it offend the "evolving standards of decency" in such a way as to violate the Eighth Amendment's prohibition against "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104-06; *Farmer*, 511 U.S. at 834; U.S. Const. amend. VIII. Only "extreme deprivations" are sufficient to constitute a violation of the Eighth Amendment; *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

Here, Plaintiff fails to attribute *any* conduct whatsoever to Defendant Lawrence specifically and individually. (DE 1 at p. 5). Rather, Plaintiff claims to have "went through chain of command and have yet to receive any help, from medical or prison staff." (*Id*.). Plaintiff does not state that he sought care from this Defendant as a medical provider and was denied medical treatment, nor does he state that Defendant was even aware of the alleged denial of medical equipment or special mattress, which Plaintiff incorrectly claims to constructively equate to a lack of adequate medical treatment on behalf of Defendant. Plaintiff never alleges that he spoke to or saw this Defendant in any capacity whatsoever. Plaintiff does not allege that this Defendant denied him the additional mattress that he seeks. While Plaintiff makes broad allegations that the additional mattress was for a known serious medical condition, he does not state that Defendant was aware of that condition. Similarly, Plaintiff does not state that he sustained actual injury as a result of this Defendant's conduct.

Even accepting Plaintiff's allegations as true, they do not plausibly show an objectively sufficiently serious deprivation where upgraded mattresses were issued facility-wide and medical equipment (e.g., CPAP/APAP, bed wedge, extra blanket, bottom bunk) was provided. Plaintiff's records reflect provision of equipment and restrictions including CPAP/APAP devices, a bed wedge, an extra blanket, and a bottom bunk assignment, and the facility-wide issuance of upgraded mattresses. At most, the Complaint reflects a disagreement with medical accommodations or institutional policy changes for which Plaintiff fails to allege that Defendant was responsible for instituting.

It is Plaintiff's allegations which control the current analysis and, on the factual allegations that he has presented, the allegations against this Defendant fail to meet the threshold to state a claim for relief. *Iqbal*, 556 U.S. at 677 ("each Defendant may only be held responsible 'for his or her own misconduct.'"). These allegations are simply insufficient to meet the high bar required to demonstrate cruel or unusual punishment. *Koon v. North Carolina*, 50 F.4th 398, 406 (4th Cir. 2022) ("It is not enough simply to point to what could or should have been done. That is the language of negligence. Deliberate indifference requires a 'deliberate or conscious choice' to ignore something."). Plaintiff simply has not made allegations which are sufficient to demonstrate Defendant's subjective intent to cause harm. *Id*.

Simply put, there is no allegation in the Complaint that Defendant disregarded a serious medical condition and thereafter refused or denied adequate care and treatment of such condition in violation of Plaintiff's Eighth Amendment rights. Accordingly, Plaintiff's allegations against Defendant in his individual capacity for monetary damages should be dismissed.

## IV. PLAINTIFF'S § 1983 CLAIMS ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY.

Defendant should receive qualified immunity for Plaintiff's individual capacity claims because Plaintiff has failed to alleged facts sufficient to assert that Defendant *intentionally* violated any of his clearly established constitutional rights. The doctrine of qualified immunity protects government officials and contracted agents serving state functions as arms of the state from being subjected to actions for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)). "[I]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526.

"The test for qualified immunity is a two-pronged inquiry. The court must determine, in no particular order, (1) whether a constitutional right has been violated on the facts alleged and (2) whether the right was clearly established at the time so that it would be clear to an objectively reasonable officer that his conduct violated that right." *Adams v. Parsons*, 2011 WL 1464856 at *4 (S.D. W.Va. April 15, 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 200–02 (2001)). Qualified immunity protects government officials and contracted agents from "bad guesses in gray areas" and ensures that they are only liable for crossing bright lines. *Maciarello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

As shown *infra*, the Complaint does not allege facts to even plausibly infer violations of Plaintiff's statutory or constitutional rights by this Defendant as he does not even allege any requests for and denial of medical care from this Defendant specifically.

Plaintiff does not claim that Defendant was aware of any medical condition from which he allegedly suffered or that he suffered injury as the result of this Defendant's conduct. Even if the Court were to find a violation of Plaintiff's rights, they were not clearly established at the time. There is no evidence supporting a finding that Plaintiff had a clearly established right to an additional mattress from Defendant when he never requested the same from Defendant himself.

Even if the Complaint stated a constitutional violation, Defendant is entitled to qualified immunity unless the right was clearly established such that every reasonable official would understand that declining to provide a second mattress at a facility that had transitioned to upgraded mattresses, and where multiple alternative accommodations were provided, violated the Eighth Amendment. The Step Two and Step Three grievance decisions reflect a facility policy that "extra mattresses may not be provided at facilities that have new/upgraded mattresses," and confirm the facility-wide mattress upgrade and provision of a single mattress, with other accommodations available. On these pleaded facts, it was not clearly established that adherence to such institutional standards and provision of alternative medical accommodations would violate the Eighth Amendment. Because Plaintiff cannot establish any constitutional violation against Defendant for the reasons stated above, and because there is no allegation that the alleged right was clearly established, immunity shields Defendant from liability for Plaintiff's claims against him in his individual capacity, and any such claims must be dismissed.

## CONCLUSION

Plaintiff has sued Defendant in his official and individual capacity for monetary damages. However, Plaintiff's failure to complete the mandatory grievance process

subjects his claim to dismissal. Further, sovereign immunity prevents Plaintiff's claims for monetary relief against Defendant in his official capacity, and Plaintiff's allegations do not meet the high bar required for demonstrating cruel or unusual punishment. Additionally, Plaintiff's allegations against Defendant in his personal capacity are barred by Qualified Immunity. And finally, Plaintiff has plead no facts directed at or involving Defendant to give rise to any claim to exemplary or punitive damages.

Accordingly, Defendant respectfully requests that this Court dismiss Plaintiff's claim or claims against him.

Respectfully submitted this 28th day of September, 2026.

Respectfully submitted,

*/s/ K*imberly D. Grande

Kimberly D. Grande
NC State Bar No: 40708
LEWIS BRISBOIS BISGAARD & SMITH LLP
3600 Glenwood Avenue, Suite 350
Raleigh, North Carolina 27612
919.821.6160
Kimberly.Grande@lewisbrisbois.com

*Counsel for Defendant, Lawrence Adair*

## CERTIFICATE OF SERVICE

I, Kimberly D. Grande, hereby certify that on this the 28th day of September, 2026, a copy of the foregoing **MEMORANDUM OF LAW SUPPORTING MOTION TO DISMISS BY DEFENDANT LAWRENCE ADAIR** was served via U.S. Mail, on the following:

Jaron M Cornwell
Neuse Correctional Institution
Offender No. 0947543
PO Box 2087
Goldsboro NC 27533
*Plaintiff Pro Se*

*/s/ Kimberly D. Grande*
Kimberly D. Grande
NC State Bar No: 40708
LEWIS BRISBOIS BISGAARD & SMITH LLP

*Counsel for Defendant, Lawrence Adair*